California has a strict statutory scheme requiring brokers who perform brokerage activities within the state to be licensed, even for de minimis brokerage activities. Persons who lack a California broker's license cannot recover compensation for such services, and making the determination about whether one has performed brokerage activities within California is a highly factual analysis. In this case, AFC Realty Capital engaged in loan broker services purposefully directed towards Californian appellants, the Dale and Ranchod parties, for a commercial hotel conversion project in Sacramento. AFC's principal, Mr. Pfefferman, traveled to California in his role as broker to personally review the property and discuss the project with Mr. Dale and Mr. Ranchod. And it's undisputed that AFC and Mr. Pfefferman are unlicensed in California. Therefore we believe the district court erred in granting summary judgment in this case and awarding it a broker's commission. At minimum, there are triable issues of fact in this case in which summary judgment is inappropriate. Therefore, the judgment should be reversed. Ms. Roussos, can I ask you, you used the word purposefully directed, but we're not dealing with a question of personal jurisdiction. It's more of a statutory construction, and the statute talks about brokerage acts within this state. And so, as you know, we have this Ninth Circuit opinion, consul limited, that interpreted that statute to refer to only the acts that are brokerage acts or services that are conducted within the state's boundaries, but excluding those acts that are out of state. Why is that not binding on us? The facts of consul are very different than the facts here and procedurally as well. And I'm going to address consul, but I wanted to mention in your question, you noted the purposefully directed language, and that comes from the California Department of Real Estate's advisory opinion on what it means to conduct brokerage activities within California within the meaning of the statute. But turning to consul, that was a motion to dismiss on the pleadings. It was not a summary judgment case. There was no evidence in that case. It was a pleading case only. And in that case, the court actually, what the court held was that there was no facts there indicating that there was any brokerage activities conducted within California. The only fact was that the property, some properties were located in California. That was it. In fact, it wasn't even clear that anything had begun in that case because these were future agreements that had not been performed yet. And so the facts of that case are very thin. There's very little to compare it to the case here. So let me jump in there. I mean, the facts here, we have property located in California, we have the client located in California. What else do you have that's located in California? Because it seemed to me that consul was pretty analogous. So we have a few other facts. First of all, again, Mr. Fefferman did travel personally to California to view the property and to discuss the deal with the appellants here. And that is a different fact. That fact was not in consul. And when he came to- But what about that? What about that visit indicates that he was engaging in broker activities during that visit? Because I actually thought that your clients in their testimony basically conceded that during that specific trip he wasn't doing brokerage things. I don't believe that they conceded that. But the reason that that was brokerage activities is it was part and parcel of this agreement, which was an agreement for brokerage services. And when he came to California, it was with his broker hat on. He was not here for any other purpose other than to fulfill this agreement. And so it was information gathering. And part of the in furtherance of pursuing these brokerage activities in order to arrange financing for this project. In addition, this was purposely, this activity was purposely directed at Californians. So we do have appellants are all in California. The property is in California. The appraisers, the construction firms are in California. And Mr. Pfefferman was extensively communicating with CBRE and with the construction firm in this case. In fact, he arranged the appraiser, he actually arranged the appraisal with the lender. And in fact, I'm looking at pages 399 to 340 of the excerpts of record. And in that, that is an email from Mr. Pfefferman about suggesting doing the appraisal and him actually making all of the arrangements with the California appraiser on that. If I go back, I guess I go back to my earlier question. If purposeful availment had been in the statute, I think you would have a much stronger case to make. As I read the record or understood it, Mr. Pfefferman conducted all of these activities from his New York office. So I agree, he made many arrangements and sought lenders and did other things from New York, but we're still stuck with the plain language of the statute, you know, acts within the state. And we have a Ninth Circuit panel that has held that. And I'm not aware of any state court decision that has expressly disavowed or disagreed with CONSEL since its decision in 1980. Is there anything specifically about this issue about brokerage services that has been published in California that would contradict CONSEL? Well, Your Honor, no, not specifically on brokerage services, but there is the advisory opinion from the Department of Real Estate, which is based on the California Supreme Court's decision in Burbrower. And Burbrower is a 1998 case, I believe it's of much subsequent to CONSEL. And Burbrower discusses what it means to practice law in California. And I would say that within California and in California are essentially the same thing. The term within, one of the meanings of it is in, so it's essentially a similar phrase. And it's an ambiguous term within California, and therefore the Department of Real Estate, their analysis is highly persuasive, Your Honor. It's not based on a personal jurisdiction analysis, but it's based on the Supreme Court's analysis on what it means to practice law in California, which is analogous in this situation. And it's not a simple question of whether someone has entered the geographic limits of the state. And I would also note that CONSEL has never, as far as we can tell, as far as I can find, CONSEL's never been cited on this issue, except in this case and in the related case that we mentioned in our brief. It's a choice of law case, you know, it's a very different case. And typically, I mean, it has not been cited for this issue. The California courts would have no reason to, or the California legislature would have no reason to respond to CONSEL when it really hasn't been used. But I guess the difficulty is if we were to overlook CONSEL, which is on point, we would have to try to predict what the California Supreme Court would do. And I suppose the best that you would say is in Burbrower dealing with an attorney, you know, with legal practice issues, the court said, it didn't say one way or the other whether, you know, it's a highly factual context. And so that's a little bit of a thin basis in order to say, well, we predict the California Supreme Court would say that it has, you know, that actions outside of the state would also be encompassed within the phrase within the state. And I appreciate your comment, Your Honor. I think that, first of all, I don't agree that CONSEL is on point. Again, it's not a summary judgment case. In that case, the court stated that if there was evidence of activities performed within California, then the parties could come back. And I think that we do have that here, including not only the trip to California, but the extensive context with California in terms of arranging the financing in this case, including with the appraisers and other entities involved. But just, again, looking to the Burbrower case, the court in that case, it is a highly factual analysis. And the court used a qualitative analysis to look at the nature of the context. Were they merely fortuitous, insignificant, or was it a significant extensive context? As well as here, and what the DRE looks at is whether that the context were designed to serve the real estate needs of Californians and whether they were substantial repeated systemic and substantive. And I believe that we have that here. But again, this is a summary judgment case, and the facts must be viewed in the light most favorable to the appellants in this case. And looking at all of the evidence here, I mean, there's extensive brokerage activities. I think the record's very clear that there's brokerage activities. Whether they're within California is a question of fact that looks at the nature of those activities. And there were extensive contacts with Californians, not just my clients, but extensive contacts. If this was a case involving whether there was practice of law in California, I think there'd be a question of fact here. And it's a highly analogous situation to the present case. There was the contacts were designed to serve the real estate needs of Californians, my clients. The contacts were substantial. They were repeated. They happened over many, many months, and they were not random, isolated, or fortuitous. When Mr. Pfefferman came here, he wasn't here on a trip for fun or completely unrelated to this agreement. His own declaration says it may have been after the agreement was signed. And I would also note that California courts have held that obtaining information to be used in negotiations, if that information is actually used, is also considered a brokerage activity. And that's the case law, I think it's the Pollack case in Hasekian case, which is cited in our reply brief. Did you want to leave any time for your rebuttal? Yes, I do, Your Honor. I see that I have three minutes, and I will reserve the rest of my time for rebuttal. Thank you. Good morning, Your Honors. James Carman on behalf of AFC Realty. Thank you for having me. First, it's a privilege to have to defend Judge England's decision relative to this case, because in his analysis, you can see that what he looked at first was, was there a contract? And the parties admit that there's a contract, and it's very clear even that the parties admit that there was a breach of the contract by the defendants when they, of course, took all of my client's information and then tried to, and successfully negotiated their own separate loan deal with Farm Credit. And looking at that information is what drew Judge England to actually draw his conclusion that this is a simple breach of contract case. Addressing the question of brokerage services in California, there is no information, and let's be clear, counsel had plenty of time to do depositions of parties, do depositions of non-parties, figure out information that would have indicated that my client was doing something in the state of California in violation of the statute. There's nothing. There's nothing in the record that shows that. He showed up in California, admitted, showing up in California for dinner, not with people that he'd never met before, Judge. Not with somebody who he just showed up and said, oh, are you guys interested in doing business with me? He had done the same types of deals five times with the joint venture partner, Rowood Rancho. Five separate times they had done the same thing. And why did they do the deal with this guy? Why did they do the deal with Arthur Fefferman? Because he is well known in the hotel conversion business of doing precisely this type of finding and helping people walk through how you convert a building like the California Food Building into a hotel. So what do you make of counsel's argument that preparatory work can constitute brokerage services? So even his going to California to tour the building and have dinner with, and I don't know if it, was that at the stage where he had already been hired or was that before? I think on the timing side of it, we're uncertain. I don't think the witnesses really knew whether it was before or after. I'll say this. Certainly, he had been solicited by them, right? So remember, this is, you know, the one thing about this that I was thinking of as I was coming here is counsel's trying to put what I would call a square peg into a round hole. And what I mean by that is this. The statutory provision is designed to protect the innocent person who's selling and buying real estate in a, I'll call it a retail context. If you look at this transaction, this transaction's a $22 million loan, which was, as part of the agreement, a whole series of other activities were taking place. Not with people who had never been involved in the business before. In fact, Sundeep owned between 10 and 12 LLCs in California. Six of them or so were actually real estate LLCs. And so they knew real estate. What they didn't know, Judge, they didn't know how to convert a hotel or a building into a hotel like Arthur Featherman did because he'd been doing it for 40 years, Judge. That's why they solicited Arthur, not why he came to see them. They wanted him to do this process. Now in terms of preparing a brokerage thing, I mean, they, the deposition of my client and his travels to California is pretty simple. I think they asked maybe 10 questions. One, what'd you guys do? We had dinner not only with Sundeep and Ranshaw, but we also had it with some other people. What else did you do? We walked through the building. There's not a single question, not a single piece of information that would indicate that there was any type of broker-related services there. He's visiting what at this point is a friend of his, Ranshaw, who he'd been doing business with for 10 years in exactly this space, converting buildings into hotels. Did plaintiffs make any kind of concession that he had not conducted any brokerage-type services in one of their filings? When I asked Sundeep those questions, his answers were, I remember there being dinner and I remember we walked through the building. That can't be brokerage services. It can't be. I mean, if someone's visiting California, yes, they had made an agreement at some point either before or after, but they were certainly contemplating this transaction.  that the statute was intended to foreclose people from doing. For that reason, there's no evidence in this record that would indicate that there were any brokerage services taking place in the state of California. So how would you respond to Ms. Russo's argument pointing to the Supreme Court decision in Burbank about legal activities being out of state and it being a highly factual inquiry? So I think the consul court got their finger on the pulse of it. Actually, Judge England I think may have gotten his finger on the pulse of this as well, which is, you know, that decision is a long time ago and there's been a lot that's happened between that decision and today, and there's been a lot of opportunity for the California legislature to come out and say, hey, hang on a second. We think consul's wrong. They've had 40 years to do it, Judge. We think consul's wrong. You guys are in the wrong spot. We think we should be changing this regulatory scheme so that we actually capture other activity that's more specified. That is, with all due respect to this court, not the province of this court. It's the province of the legislature. That's why we have the legislature, to make these rules and change these rules. And so if for some reason now we're going to start using that a California email transmission from New York is considered within the state of California, we're in a place way beyond where the statute's been written, and we're reading this statute as to whether it should foreclose my client from recovering a fee for all the work that he did that's admitted to by the defendants because they want to use this statute to protect themselves from having to pay the financial charge that they agreed to in the agreement. That's what they're using it for, Judge. Counsel, would you disagree with your friend across the aisle's assessment of the attorney case, Burbrower? So for the example of an attorney is sending an email to a client in California related to legal services, do you think that Burbrower doesn't say that that's covered under that licensing scheme? So my concern there, which I'm a little outside of my element because I haven't looked at it, is, is there a difference lawyer to broker? So is there some variation lawyer to broker? Well, it seems to me that the key there is the statutory language, right? And so there it says in California in our statute that we're looking at, it says within this state or within this, yeah, within the state, which I seem to agree that that seems pretty similar language. So I guess I'm asking you when you're reading a Burbrower and it's discussion of the facts there and the statute there, do you think that what I just described, a lawyer sending an email to a client in California discussing legal services, do you think Burbrower says that's covered by that licensing scheme? You know, I, again, I, I'm going to hedge judge because I really don't know whether a lawyer's concept, conduct in sending an email, for example, from New York to California is their practice of law in the state of California. My instinct judge that tells me, no, I have not done the research on that from the California standpoint. I think the reason why they use the within language in California in the California statute is because they were trying to stop people from taking advantage of innocent people buying and selling real estate. You sell three pieces of real estate in your life. You buy one when you buy your first house, you upgrade once and then you sell down to your house when you go to retire. There's three times and there's very, it's a very easy place for people to take advantage of the California general population. That's not what we have here. We don't have the general population here. We have sophisticated financial individuals making a business deal to help convert a California building into a hotel. And so, in that context, judge, within the state of California was intended to mean don't be in the state of California if you don't have a license. That's how I think of that statute. With the Burr-Bauer side of it, judge, I'm hedging on that only because I just don't, I can see why there's a difference on the law license side of it than I do on the brokerage side of it. They're protecting different things, in my view. And that's why the California real estate brokerage statute is trying to protect the residents of California as compared to this question of the practice of law, which I think is a more nuanced problem. I have a different question, and that has to do with sort of conflict of authority. Obviously, we have the Consul case, which seems to pretty clearly reference, well, it does reference the broker context. And if we had a California appellate court decision that undermined or questioned Consul, then that would be something we would really have to look closely at. My question is, when we have a Ninth Circuit decision that seems to apply, what role does a California agency statement play there? I think that issue's been briefed in our respective briefs, which is it's a persuasive authority piece of information, right? It's something that someone's trying to guide the court and say, look, under these facts, this is what we should do. And I think what's very interesting about that advisory opinion in the context of this case is it, again, drives the question that it's fact-driven. And what allowed Judge England to make the decision that granted my client summary judgment here is that there's really no dispute about the facts. It's undisputed that my client did a very good job like he did on the five prior occasions doing the work that he was hired to do. The defendants don't even challenge that. They don't challenge that he did exactly what they told him to do by getting the loan agreement together so that they could sign off on the agreement. And they don't disagree and they don't dispute that after having that information, they so repetitiously took it and went to go do their own transaction on their own, again, supporting the fact that these guys weren't unsuspecting people in the state of California that had no idea what they were doing. They were sophisticated real estate individuals who knew what they were doing and were going to use my client's guidance and information, take advantage of it, and go do what they thought was best for them. And that's exactly what happened here. With the problem, my client didn't get paid. I want to come back to my question. I think even if we found the DRE's advisory opinion persuasive, could that displace a prior Ninth Circuit decision? Obviously, Judge, my answer to that question is no. I mean, you have a Ninth Circuit decision, which I see on all floors. And the only way that you could sidestep that decision from being binding on this court, in my opinion, would be to say that Judge England missed a fact that warranted that this case should be tried. And counsel, in my view, has not shown the court a fact that would allow the court to say, oh, this is something that should be tried in front of a jury. There's not a fact to that point. They had plenty of opportunity to ask questions during the discovery phase of the litigation, but they didn't do that. And so, in my view, counsel is absolutely binding on this case. And what makes it even, I'll call it easier to apply, is the lack of dispute between the parties during the course of this litigation on the facts. Facts are exactly what they are. There's really no dispute. They agreed that there was a contract. They agreed that there was performance under the contract. They agreed that they were supposed to pay my client under the contract, and that they didn't. And so, the question is, did they somehow, did my client somehow do something in California that breached the agreement? Judge Englund said, look, I looked at this stuff. There's nothing he did. And I think that supports the reason why summary judgment was awarded to my client. Well, I don't have any other questions. I don't know if Judge Forrest, do you have anything else? I do not. And with no further questions, I'll yield the rest of my time. Thank you, Judge. Thank you. Thank you, Your Honors. I want to address, I want to go back to Consul briefly. Consul didn't actually address what it means to perform brokerage services in California. It just simply said that in that case, there was no, nothing in the complaint to indicate that Wilson performed any regulated acts in California. So, it didn't actually address what the meaning of that was. It just said, well, you know, there's in-state land here. And that's really the only fact we have. Well, Consul, I mean, I think I understand that that case was decided at a different procedural posture. And, of course, the facts aren't exactly the same here. They are analogous in the sense of we have an out-of-state broker and an in-state property. But the thing that I'm having a hard time figuring out how you get around is that case says, was looking at the statute that we're looking at and says, it's plain on its face what it means. And then there's a statement in there about it means that within the geographical boundaries of California. And those are legal statements and interpretive statements that I don't understand how you can say we just distinguish them on the facts of the case, that those aren't statements that are made, found in fact. And, you know, I do need to go back and read it one more time, Your Honor, but I don't think that the court stated that it had to be within the geographic boundaries. And I'm not sure that the court stated that the statute was clear. It looked for guidance on how to interpret the statute. But it really doesn't have a lot of analysis on this particular issue of what it means. The other thing is that it does predate the way that business is done in the world today. It is a 1986 case. The Burbrower case is from 1998. A lot changed between those two cases and certainly until the time that the DRE opinion came out in 2012. I don't believe that the DRE opinion is totally inconsistent with consul, actually. Mr. Russo, can I ask? I'm sorry to interrupt. No. What about the fact that even if the DRE opinion came out in 2012, the legislature still hasn't changed the statute, even in those intervening 10 years. So you have these various points in time where a legal interpretation of the statute is being made. The statute's language remains unchanged all this time, and the legislature has not acted to change it consistent with the way that DRE thinks it ought to reflect more modern sensibilities. And I did go back and look at consul, and it does talk about within the state, and we hesitate to ignore this plain language. So to echo Judge Forrest's question, I mean, that's a legal determination, a statutory interpretation. It seems hard to get around that when that is the basis for the decision. Thank you for reminding me of that, Your Honor. I still don't believe that consul really analyzed this issue in detail. It was focused very much on the choice of law issues, and as I said, it's not been cited for this particular issue of what it means to practice, to have brokerage activities within the state. But the DRE analysis is consistent with the statute. That's why the legislature wouldn't need to revise the statute. It hasn't done that in response to the Burbrower case either on the practicing law in California. This is all consistent with the language of the statute. And as far as changing the statute in response to consul, I mean, the legislature is not bound by federal decisions in terms of state law interpretation, and so really the legislature has no reason, and it hasn't been cited, as I've mentioned, in any state case on this issue. One last thing I just wanted to mention to you, there's no exception in the statute for commercial real estate or for sophisticated entities, which I think my friend on the other side is arguing. And I also wanted to mention that Mr. Fefferman, in his declaration, stated that he offered his services to appellants. So he did, viewing the facts in the light most favorable, he did actually solicit services, and he also states that he was at the property possibly after the agreement was signed. And so he did tour the property. There is no concession that that was not brokerage activities by my clients. They didn't testify to that. But also that's a legal issue in any event as far as a legal conclusion as to whether he was engaging in brokerage activities on that trip. But with that, Your Honor, I think I've gone over, and I will submit. Great. Thank you. Counsel, thank you both for your helpful arguments. The matter will stand submitted.
judges: NELSON, FORREST, SANCHEZ